**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BINIAM MUSSA NAHOM,** | : | |
| | : | |
| **Petitioner,** | : | **3:26-cv-2636** |
| | : | **(JUDGE MARIANI)** |
| **v.** | : | |
| | : | |
| **CRAIG LOWE, Warden of Pike County Correctional Facility,** | : | |
| | : | |
| **Respondent.** | : | |

**MEMORANDUM OPINION**

Petitioner Biniam Mussa Nahom ("Petitioner" or "Nahom"), a dual national of Sudan and Ethiopia, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner is detained within the Middle District of Pennsylvania and names as Respondent Craig Lowe ("Respondent," or "Lowe"), Warden of Pike County Correctional Facility. Because Petitioner has a final order of removal and he has not carried his burden to show that removal is not reasonably foreseeable, the Court will presently deny his petition. However, Respondent must diligently and expeditiously effectuate Petitioner's removal, which Respondent has proffered to be imminent.

## I. BACKGROUND

Petitioner is a 34-year-old citizen of Sudan who entered the United States in 2017 as a refugee along with his family. (Doc. 7-2 at 5). Petitioner is also a national of Ethiopia, where his mother was a citizen. (*Id.*). Petitioner's status was adjusted to lawful permanent

resident on February 12, 2020. (Doc. 7-4 at 2). In January 2024, Petitioner was convicted of indecent assault of a person less than 13 years of age after he sexually assaulted a nine-year-old child, for which Petitioner received a sentence of two (2) years imprisonment and three (3) years probation. (Doc. 7-4 at 2; Doc. 7-2 at 18; *see also* 18 Pa. Cons. Stat. Ann. § 3126(a)(7)).[1] On February 25, 2025, immigration officials arrested Petitioner upon his release from criminal detention and issued a Notice to Appear charging him as deportable pursuant to sections 237(a)(2)(E)(i) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act. (Doc. 7-4 at 2; *see also* Doc. 7-5).

On August 15, 2025, an Immigration Judge ordered Petitioner removed to Ethiopia, with an alternative removal order to Sudan. (Doc. 7-3 at 4). Petitioner timely appealed the removal order to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on January 21, 2026, (*see* Doc. 7-6), and the removal order became final upon dismissal of Petitioner's BIA appeal. *See* 8 C.F.R. § 1241.1(a) ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final...[u]pon dismissal of an appeal by the Board of Immigration Appeals[.]"). On February 18, 2026, Nahom filed a Petition for Review ("PFR") with the United States Court of Appeals for the Third Circuit. (Doc. 7-4 at 4). The Third Circuit did not stay Petitioner's removal during the pendency of the PFR, and the PFR has since been decided, affirming

[1] Petitioner appears to have also been previously charged with DUI, for which no disposition is available. (Doc. 7-2 at 4–5). He further pled guilty to Disorderly Conduct as well as two separate counts of Summary Harassment – Subject Other to Physical Contact in 2021. (*Id.*).

the BIA's determination. *See Nahom v. Att'y Gen. United States*, Case No. 26-1341, Dkt. No. 22 (3d Cir. September 18, 2026) (non-precedential).

During the pendency of Petitioner's PFR, the Government attempted to effectuate his removal, which Petitioner initially refused to assist in by declining to execute travel documents. (*See* Doc. 7-4 at 3). However, Petitioner eventually acquiesced in facilitating the Government's attempt to secure travel documents, and he was interviewed by representatives of the Embassy of Sudan on May 27, 2026. (*Id.* at 5). Following a Sudanese personnel change, Petitioner was again interviewed on August 27, 2026, by representatives of the Embassy. (*Id.* at 5–6). The Government represents that it is diligently attempting to remove Petitioner, with approval of travel documents pending from Sudan. (*Id.* at 6).

Petitioner has been detained pursuant to a final order of removal since January 21, 2026, or approximately ten (10) months as of the date of this Order. Additionally, the Government represents that they have complied with Petitioner's entitlement to custody re-determinations during the preceding ten (10) months, including by considering Petitioner's request for a Post Order Custody Review on April 20, 2026 (*see* Doc. 7-4 at 4–5), through which a Supervisory Detention Deportation Officer, and subsequently the Deputy Field Office Director, found that Petitioner's continued detention was proper because his removal was reasonably foreseeable and he remained a threat to public safety, pursuant to 8 C.F.R.

§ 241.4 and 8 C.F.R. § 241.13. (*Id.* at 5–6). Petitioner further received a panel interview regarding his continued detention on July 14, 2026. (*Id.* at 6).

Petitioner filed the present petition for writ of habeas corpus on September 14, 2026, alleging that his detention for more than six months violates the Due Process Clause of the Fifth Amendment and his removal to Sudan is significantly unlikely in the reasonably foreseeable future. (*See generally* Doc. 1). Respondent opposes the petition. (Doc. 7).

## II. STANDARD OF REVIEW

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). It is well established that a federal habeas corpus petitioner generally has the

burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

Given that Petitioner has filed his habeas petition *pro se*, the Court will carefully consider Petitioner's arguments and "liberally construe[]" the petition. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (explaining the Court's "[special] obligation to liberally construe a *pro se* litigant's pleadings is well-established"). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).

## III. ANALYSIS

In the petition, Petitioner alleges that his detention has exceeded six months and his removal to Sudan is significantly unlikely in the reasonably foreseeable future.[2] Respondent opposes the petition, claiming that the petition should be dismissed because the Government's request to Sudan for Petitioner's travel document remains pending and, upon approval, is "significantly likely in the reasonably foreseeable future." (Doc. 7-4 at 6).

[2] Although not raised by either party, the Court has jurisdiction to consider the issues raised in the petition. *See Khalil v. President, United States*, 164 F.4th 259, 277-79 (3d Cir. 2026) (holding that detention specific claims, like length and conditions of confinement do not "arise from" removal proceedings and can be addressed by district courts); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (declining to interpret 8 U.S.C. § 1252(b)(9) in an "extreme way that would also make claims of prolonged detention effectively unreviewable").

**A. <u>Section 1231(a) and *Zadvydas*</u>**

8 U.S.C. § 1231(a) "governs the detention, release, and removal of individuals ordered removed." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). "Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day removal period." *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(A)). "The statute provides that the Government 'shall' detain noncitizens during the statutory removal period." *Arteaga-Martinez*, 596 U.S. at 578; *see also Guzman Chavez*, 594 U.S. at 528 ("During the removal period, detention is mandatory.")

"After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specific grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal." *Arteaga-Martinez*, 596 U.S. at 578-79 (citing 8 U.S.C. § 1231(a)(6)). "Section 1231(a)(6) does not expressly specify how long detention past the 90-day removal period may continue for those who fall within the four designated statutory categories." *Id.* at 579.

In *Zadvydas* the Supreme Court found that a statute "permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690. To avoid those concerns, the Supreme Court interpreted 8 U.S.C. § 1231(a)(6) to limit post-removal order detention to a period "reasonably necessary to bring about that alien's

removal from the United States." *Id.* at 689; *see also Clark v. Martinez*, 543 U.S. 371, 384 (2005) (clarifying *Zadvydas* and noting that the "the statute should be read (in line with the other plausible reading) to authorize detention *only for a period consistent with the purpose of effectuating removal.*") (emphasis added). Detention for up to six months after a final order of removal is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701.

The expiration of the six-month period "does not mean that every alien not removed must be released after six months." *Id.* Rather, "[a]fter this 6-month period, *once the alien provides good reason* to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* (emphasis added). Key to the *Zadvydas* analysis is that the noncitizen carries the initial evidentiary burden of showing good reason to believe that removal is not reasonably foreseeable. *Id.*; *see also Masih v. Lowe*, 2024 WL 4374972, at *3 (M.D. Pa. Oct. 2, 2024) (finding petitioner "has not carried his initial burden to establish good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."); *see also James v. Lowe*, 2024 WL 1837216, at *3 (M.D. Pa. Apr. 26, 2024) ("The court finds that James has failed to establish 'good reason to believe' that there is not a 'significant likelihood of removal in the reasonably foreseeable future.'" (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021))).

Accordingly, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

"[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. "*Zadvydas* does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief." *Alexander v. Att'y Gen. United States.*, 495 Fed. App'x 274, 276–77 (3d Cir. 2012) (non-precedential).

**B. <u>Petitioner Has Not Satisfied His Burden</u>**

Petitioner's presumptively reasonable six-month period of detention under Section 1231(a)(6) has run. *Zadvydas*, 533 U.S. at 701. However, as articulated above, the fact that detention is no longer presumptive reasonable does not necessarily make true the inverse—i.e., that detention beyond six-months is *un*reasonable. Petitioner must offer at least some evidence beyond his conclusory statements that detention is unreasonably prolonged in order for the burden to shift to the Government to justify continued detention.

In his petition, Nahom offers simply that "DHS/ICE has failed to deport me in a [reasonable] time frame and now my detention has become unconstitutionally prolonged," noting the length of his detention at the time of filing. (*See* Doc. 1 at 7). However, in similar cases, courts have found that "unsupported arguments and speculation that it could take 'years' to receive travel documents from [another country] are insufficient to substantiate a constitutional violation." *James v. Lowe*, 2024 WL 1837216, at *3 (M.D. Pa. Apr. 26, 2024). "If such a cursory argument were considered sufficient to establish 'good reason' to believe

that removal is not reasonably foreseeable, nearly all discretionary detention under Section 1231(a) where removal has not yet occurred would be subject to habeas attack. [Petitioner] must do more." *Masih v. Lowe*, 2024 WL 4374972, at *3 (M.D. Pa. Oct. 2, 2024). Indeed, in prior cases, this Court has granted release under *Zadvydas* because the habeas petitioners submitted, for example, declarations from appropriate professionals outlining the specific process for producing travel documents that the country at issue uses.[3] In other words, the mere fact of detention is not enough for a petitioner to carry his initial evidentiary burden. *See Zadvydas*, 533 U.S. at 701 (holding expiration of the six-month period "does not mean that every alien not removed must be released after six months.").

Moreover, the facts of this specific case show that removal remains, at this time, reasonably foreseeable. The present delays were due, at least for some small period of time, to Petitioner's own refusal to cooperate, and then an unavoidable personnel change at the Sudanese Embassy. (*See generally* Doc. 7-4). Since the personnel change, the process of securing travel documents for Petitioner has progressed, including through an interview with the Embassy. (*Id.*). With that said, the Court is wary that "the longer an alien is detained, the less he must put forward to obtain relief." *Alexander.*, 495 Fed. App'x at 276–77. The Court accepts Respondent's representation that Petitioner's removal is not

[3] *See Nguyen v. Sage*, 2026 WL 1348513, at *4–6 (M.D. Pa. May 14, 2026) ("Mr. Nguyen's and Dr. Ha's declarations make clear that the diplomatic process for repatriating a [refugee] like Petitioner is highly individualized and that the fact-specific vetting processing process takes a significant amount of time. Requesting travel documents from Vietnam for a pre-1995 Vietnamese refugee does not mean they will be issued, and sometime the Vietnamese Embassy constructively denies repatriation by simply not responding to ICE's request for travel documents.").

reasonably foreseeable because Petitioner himself has not carried his initial burden of proof; however, Respondent must diligently and expeditiously effectuate Petitioner's removal to mitigate a due process concern which will grow in strength as time passes.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be denied without prejudice. A separate Order follows.

Robert D. Mariani
United States District Judge